BRASH, J.
*290 *72 ¶1 Christopher L. Gee appeals his *73 judgment of conviction entered after a jury convicted him of two counts of first-degree sexual assault using a dangerous weapon.
¶2 On appeal, Gee challenges the constitutionality of WIS. STAT. § 904.04(2)(b)2. (2017-18),[1] which permits, in cases of first-degree sexual assault, the admission of evidence regarding other convictions on the same charge to show that the defendant "acted in conformity" with the conduct in the previous conviction. Id. Gee contends that his right to due process was violated because he chose not to testify based on the trial court's pretrial ruling regarding the admission of his prior conviction for rape in Indiana: the trial court determined that the prior conviction could be introduced at trial pursuant to § 904.04(2)(b) 2, but limited its admission to purposes of rebuttal in the event that Gee presented evidence attacking the credibility of the victims. Gee further asserts that the trial court erroneously exercised its discretion in making that ruling.
¶3 We conclude that WIS. STAT. § 904.04(2)(b)2. is constitutional, both facially and as applied to Gee. We further conclude that the trial court did not erroneously exercise its discretion in its ruling regarding the admission of Gee's prior conviction. We therefore affirm.
BACKGROUND
¶4 The charges against Gee stem from two separate incidents, occurring about a month apart, involving two different victims: A.M. and J.P.
¶5 On March 27, 2015, A.M. accompanied her friend and that friend's boyfriend to an apartment *74 building located at 1200 East Singer Circle in Milwaukee to smoke marijuana. The friend and her boyfriend left shortly after midnight to get more rolling papers, leaving A.M. alone.
¶6 A.M. stated that she had used the bathroom, and when she walked out an unknown man came up behind her, put a knife to her throat, and told her not to scream or he would kill her. The man forced A.M. to take off her clothes, then took her into a bedroom and locked the door. The man had penis-to-vagina intercourse with A.M. while holding the knife to her throat. Afterwards, the man unlocked the bedroom door and A.M. put on her clothes and left. A.M.'s cousin picked her up and took her to a hospital, where a sexual assault examination was performed.
¶7 J.P. reported that on April 27, 2015, she had gone to 1200 East Singer Circle in Milwaukee to have sex with "Michael" for $200, after he responded to a Backpage.com advertisement that J.P. had placed. J.P. did not know Michael. When she arrived at the apartment building, a man who claimed to be building security directed her to the back of the building. Once there, the man pulled out a knife and put it to J.P.'s throat, demanding that she perform penis-to-mouth oral intercourse. He told her not to scream or she would "end up in the river." He then forced J.P.
*291 to lie on the ground and had penis-to-vagina sexual intercourse with her. Afterwards, he told J.P. that she could leave. J.P. told her friend, who had driven J.P. to the apartment building, that the man had "raped" her. J.P. reported the assault to police after she was arrested on April 30, 2015.
¶8 Each victim gave a similar physical description of her assailant. J.P. noted that he was wearing a black knit cap at the time of her assault. Additionally, *75 both victims provided descriptions of the knife, with A.M. stating that it was "weird looking" with a black handle, and J.P. describing it has having a wood or metal handle and a curved blade.
¶9 Police were able to identify Gee and his address from the phone number he used to contact J.P. about the Backpage.com advertisement. Both victims identified Gee in the photo arrays they were shown by police. A.M. became "visibly upset" when she saw the photo of Gee. J.P. did not initially identify Gee, but after viewing his photo again, she identified him as the man who assaulted her. Police searched Gee's apartment, located at 1200 East Singer Circle, and discovered a knife with a curved blade as well as a black knit cap.
¶10 Gee was arrested and gave a statement to police. He admitted to responding to the Backpage.com ad placed by J.P., but initially said that he did not have sex with her. He later admitted that they had sex, but that he did not have the money to pay her. He said that he often does not pay prostitutes, and he denied having a knife. He said that he did not recognize a picture he was shown of A.M., but that "[t]hese girls' appearances change so drastically." Gee further stated that he had served eighteen years in prison in Indiana for a "bullshit" sexual assault charge. Detectives reviewed online court records and found that Gee had pled guilty in 1996 to a charge under Indiana's rape statute: Gee had contacted an escort service to hire a "model," and when the victim arrived at his apartment building he had threatened her with a handgun and sexually assaulted her.
¶11 Gee was charged with two counts of first-degree sexual assault with use of a dangerous weapon. Prior to trial, the State filed a motion to admit other *76 acts evidence, including the 1996 conviction in Indiana, pursuant to WIS. STAT. § 904.04(2)(b)2. Gee objected, arguing that § 904.04(2)(b)2. was unconstitutional, and that evidence of the prior conviction had little probative value and would be unfairly prejudicial.
¶12 After a thorough analysis of the constitutional issue-including a discussion of case law from the Wisconsin Supreme Court, the United States Supreme Court, and other jurisdictions, as well as a comparison to the Federal Rules of Evidence-the trial court held that WIS. STAT. § 904.04(2)(b)2. is both facially constitutional and constitutional as applied to Gee.
¶13 The trial court also determined that Gee's prior Indiana conviction could be introduced by the State pursuant to WIS. STAT. § 904.04(2)(b) 2, but only for rebuttal purposes should Gee present evidence attacking the victims' credibility. The court specifically stated that the State could not introduce that evidence in its case-in-chief. In coming to this conclusion, the court performed a Sullivan analysis to determine whether the evidence could be admitted, and found that it satisfied all three prongs of the test: it was being proffered for a proper purpose, it was relevant to the current case, and the probative value would outweigh the possibility of undue prejudice with the limitations the court had placed on its admission. See State v. Sullivan , 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).
*292 ¶14 The matter proceeded to trial in November 2015. Gee did not testify, and he stated on the record that his decision not to testify was "made in light of the [c]ourt's ruling" regarding his prior conviction. The defense called no other witnesses. Evidence relating to *77 Gee's prior conviction was never introduced. A mistrial was declared after the jury was unable to reach a unanimous verdict.
¶15 The case was retried in March 2016. J.P. testified, describing the assault. She acknowledged that she had gone to Singer Circle to engage in prostitution. J.P. further admitted that she had a warrant out for her arrest at the time of the assault, which is why she did not immediately report it to the police, and that she had been convicted of crimes on three occasions.
¶16 A.M. also testified regarding the details of her assault. A.M. acknowledged that at the time of her assault she was working as a dancer at Silk Gentleman's Club, and that after the assault she had been arrested for prostitution in a different county.
¶17 The defense called two witnesses, both police detectives. One of the detectives testified about J.P.'s initial dishonesty regarding her reason for going to the apartment building. The other detective's testimony contradicted A.M.'s testimony with regard to a composite drawing that was done prior to police identifying Gee: A.M. had testified that the composite by the detective had been "really close" to the picture of Gee she subsequently identified, but the detective testified that the picture was only forty to fifty percent complete due to difficulties with the software being utilized.
¶18 Again, Gee chose not to testify. The trial court asked him whether anyone had made threats, promises, or used any pressure to persuade him not to testify, to which he answered, "If the [c]ourt's ruling can be construed as such, then yes." The court explained that its ruling involved "consequences ... that happened to you." The court then confirmed with Gee *78 that no one had used threats, promises, or pressure to persuade him not to testify.
¶19 No evidence regarding Gee's prior conviction was introduced at the second trial, either. The jury returned guilty verdicts after less than four hours of deliberations. Gee was sentenced in May 2016 to twenty years of initial confinement and ten years of extended supervision for each count, to be served consecutively. This appeal follows.
DISCUSSION
¶20 Gee's arguments on appeal are focused on the trial court's ruling regarding the admission of his 1996 conviction for rape in Indiana. The ruling permitted the prior conviction to be introduced, but only on rebuttal should Gee present evidence attacking the victims' credibility. Evidence regarding that prior conviction was never actually introduced at trial.
I. Constitutional Challenge of WIS. STAT. § 904.04(2)(b)2.
¶21 Although not specifically identified as such, Gee's arguments challenging the constitutionality of WIS. STAT. § 904.04(2)(b)2. appear to be both a facial challenge of the statute and a challenge of the statute as it was applied to him. He contends that the statute violates his right to due process.
¶22 WISCONSIN STAT. § 904.04(2)(b)2. is an exception to the rule that prohibits other acts evidence from being offered to prove conduct. See id. Under § 904.04(2)(b) 2, where charges of first-degree sexual assault or first-degree sexual assault of a child are *79 being prosecuted, evidence of other convictions for those specific crimes may be admitted for *293 the purpose of showing that the defendant "acted in conformity therewith." Id. Evidence of convictions for equivalent offenses from different jurisdictions may also be admitted for that purpose. Id.
¶23 Statutes are presumed to be constitutional. Sambs v. City of Brookfield , 97 Wis. 2d 356, 370, 293 N.W.2d 504 (1980). To overcome this burden of presumption, the party challenging the constitutionality of a statute must prove beyond a reasonable doubt that the statute is unconstitutional. State v. Wood , 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. "The constitutionality of a statute is a question of law that we review de novo. " Id.
Facial Challenge.
¶24 A facial challenge of a statute " 'attacks the law itself as drafted by the legislature, claiming the law is void from its beginning to ... end and that it cannot be constitutionally enforced under any circumstances[.]' " Tammy W-G. v. Jacob T. , 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854 (citation omitted; brackets in original). Gee argues that other acts evidence is generally prohibited for proving conduct, and that "[n]o sound rationale exists to single out sex offenses."
¶25 Gee cites Whitty v. State , 34 Wis. 2d 278, 149 N.W.2d 557 (1967), in support of his argument. In Whitty , the court stated that it was "universally established that evidence of prior crimes is not admitted in *80 evidence for the purpose of proving general character, criminal propensity or general disposition on the issue of guilt or innocence[.]" Id. at 291, 149 N.W.2d 557. However, the issue of whether the admission of such evidence could be constitutional was not before the court in Whitty .
¶26 Furthermore, Wisconsin has a long common law tradition of applying more relaxed standards to the admissibility of other acts evidence of similar crimes in sexual assault cases. See State v. Dorsey , 2018 WI 10, ¶32, 379 Wis. 2d 386, 906 N.W.2d 158 ; see also Proper v. State , 85 Wis. 615, 630, 55 N.W. 1035 (1893) ("A greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes."). This "more liberal" standard regarding the admission of other acts evidence, known as the "greater latitude rule," is codified at WIS. STAT. § 904.04(2)(b), and includes the statute at issue here. Dorsey , 379 Wis. 2d 386, ¶¶32-33, 906 N.W.2d 158. The rule is "described as operating to 'facilitate[ ] the admissibility of ... other acts evidence' " in the prosecution of certain crimes, including serious sex offenses. Id. , ¶33 (citation omitted; brackets in original).
¶27 The first subsection under the greater latitude rule, WIS. STAT. § 904.04(2)(b)1., has been interpreted as requiring compliance with the Sullivan test. Dorsey , 379 Wis. 2d 386, ¶33, 906 N.W.2d 158. If the other acts evidence for which admission is sought satisfies all the prongs of the Sullivan test, it may then be admitted with greater latitude for an "acceptable purpose" pursuant to § 904.04(2)(a), such as "establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" See Sullivan , 216 Wis. 2d at 772, 576 N.W.2d 30.
¶28 In contrast, WIS. STAT. § 904.04(2)(b)2. is not limited to the acceptable purposes set forth in *81 § 904.04(2)(a) ; rather, the other acts evidence may be introduced to prove conduct. However, there are restrictions: it is limited to cases where first-degree sexual assault or first-degree sexual assault of a child is the crime being prosecuted, and the other acts evidence must be for a conviction of the same crime, or the equivalent *294 crime in another jurisdiction. Sec. 904.04(2)(b)2.
¶29 In drafting WIS. STAT. § 904.04(2)(b)2., the legislature looked to FED. R. EVID. 413(a). That rule allows, in any sexual assault case being prosecuted, the admission of other acts evidence "that the defendant committed any other sexual assault." FED. R. EVID. 413(a). Furthermore, other acts evidence "may be considered on any matter to which it is relevant." Id.
¶30 FEDERAL R. EVID. 413(a) is broader than WIS. STAT. § 904.04(2)(b)2., in that it allows other acts evidence to be admitted for any purpose in the prosecution of any degree of sexual assault. Nevertheless, FED. R. EVID. 413(a) has been held to comport with due process requirements. See United States v. Enjady , 134 F.3d 1427, 1433 (10th Cir. 1998) ( FEDERAL R. EVID. 413 "is not unconstitutional on its face as a violation of the Due Process Clause" when paired with the balancing requirements of FED. R. EVID. 403, which compels the court to consider the probative value of the evidence compared to the danger of unfair prejudice); see also United States v. Mound , 149 F.3d 799, 801 (8th Cir. 1998) (holding that FED. R. EVID. 413 does not violate the Due Process Clause).
¶31 The court in Enjady , acknowledging the long-standing practice of excluding other acts evidence, noted that just because that practice is "ancient does not mean it is embodied in the Constitution." Id. , 134 F.3d at 1432. The Enjady court further stated that *82 the United States Supreme Court "has recognized that prior instances of violent behavior are an important indicator of future violent tendencies," and that FED. R. EVID. 413(a) reflects the trend of " 'focusing on the perpetrators, rather than the victims, of sexual violence.' " Enjady , 134 F.3d at 1432 (citation omitted). The Mound court referenced the holding in Enjady , recognizing that it was "within Congress's power to create exceptions to the long[-]standing practice of excluding prior-bad-acts evidence." Mound , 149 F.3d at 801.
¶32 Gee, on the other hand, provides examples of similar statutes in other states that have been struck down. He cites a case from Missouri, State v. Ellison , 239 S.W.3d 603 (Mo. 2007), a child molestation case, where the court held a similar state statute to be unconstitutional. Id. at 605-07. However, Ellison was subsequently superseded by a constitutional amendment allowing other acts evidence in child sexual abuse cases to be introduced for purposes of proving a defendant's propensity to commit the crime, which the Missouri Supreme Court stated "was adopted with the evident purpose of abrogating" the holding in Ellison . See State v. Williams , 548 S.W.3d 275, 280 (Mo. 2018).
¶33 Gee also cites a case from Iowa, State v. Cox , 781 N.W.2d 757 (Iowa 2010), where the Iowa Supreme Court held that a similar statute which allowed the admission of other acts evidence to show "general propensity" in sexual abuse cases violated the due process clause of the Iowa Constitution. Id. at 759. The court recognized that in past cases it had interpreted the due process clauses of the United States Constitution and the Iowa Constitution "in a similar fashion," but that it also has the "right and duty to differ in appropriate cases." Id. at 761 (citations and *83 one set of quotation marks omitted). Thus, the court struck down the statute as unconstitutional "[b]ased on Iowa's history and the legal reasoning for prohibiting admission of propensity evidence[.]" Id. at 768. Given that the reasoning for finding the statute unconstitutional was specifically based on Iowa law and its constitution, we do not find Cox persuasive. *295 ¶34 Furthermore, the State points out that at least ten other states have enacted statutes similar to WIS. STAT. § 904.04(2)(b)2., many of which have survived constitutional due process challenges in those respective states' courts. See, e.g. , Horn v. State , 204 P.3d 777, 781 (Okla. Crim. App. 2009) (where the Oklahoma Criminal Court of Appeals, noting that its Due Process Clause is "the same" as the United States Constitution, relied on the decisions of the federal appellate courts finding FED. R. EVID. 413 constitutional because they "rest[ed] on sound principles and offer[ed] guidance" to the court's analysis); State v. Boysaw , 52 Kan.App.2d 635, 372 P.3d 1261, 1269 (2016) (where the Kansas Court of Appeals noted the state's long history of allowing exceptions for evidence in sexual assault cases, and found the federal cases "highly persuasive" because Kansas's statute, like FED. R. EVID. 413, requires the trial court to balance the probative value of the evidence with the potential for unfair prejudice).
¶35 We, too, find the holdings of the federal courts helpful, as the Wisconsin Supreme Court "has repeatedly stated that the due process clauses of the state and federal constitutions are essentially equivalent and are subject to identical interpretation." State v. Hezzie R. , 219 Wis. 2d 848, 891, 580 N.W.2d 660 (1998). Accordingly, we apply the test established by *84 the United States Supreme Court for a challenge on due process grounds of the constitutionality of admitting other acts evidence to prove conduct: "whether the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice.' " Dowling v. United States , 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (citation omitted).
¶36 As we have discussed, Wisconsin has a long tradition of applying more relaxed standards regarding the admissibility of other acts evidence in sexual assault cases. See Dorsey , 379 Wis. 2d 386, ¶32, 906 N.W.2d 158 ; Proper , 85 Wis. at 630, 55 N.W. 1035. Furthermore, WIS. STAT. § 904.04(2)(b)2. is more restrictive than FED. R. EVID. 413, upon which it was based: § 904.04(2)(b)2. is limited to only the most serious sexual assault cases-first-degree sexual assault or first-degree sexual assault of a child, and the other acts evidence must be for a conviction of the same crime , as opposed to a conviction for a lesser degree of sexual assault, or charges for sexual assault that did not result in a conviction. Based on these restrictions, together with Wisconsin's legal history regarding this issue in sexual assault cases, we cannot conclude that the admission of other acts evidence to prove conduct "is so extremely unfair that its admission violates 'fundamental conceptions of justice.' " See Dowling , 493 U.S. at 352, 110 S.Ct. 668 (citation omitted).
¶37 Furthermore, given that the Eighth and Tenth Circuits have upheld the broader FED. R. EVID. 413 as compliant with the Due Process Clause, it follows that the more restrictive WIS. STAT. § 904.04(2)(b)2. passes constitutional muster as well. Therefore, we conclude that Gee has not overcome the burden of presumption and proven beyond a reasonable *85 doubt that the statute is unconstitutional on its face. See Wood , 323 Wis. 2d 321, ¶15, 780 N.W.2d 63.
As-Applied Challenge.
¶38 As previously noted, Gee's constitutional arguments are not specifically identified as facial and as-applied challenges. In our review of his brief, we agree with the State's interpretation-that he seems to have two bases for challenging WIS. STAT. § 904.04(2)(b)2. as it was applied to him: (1) that his right to be informed of the accusation against him, pursuant to *296 WIS. CONST. art. I, § 7, was violated because he was not informed that "his past history generally, or his 1996 Indiana rape conviction in particular, were the bases for the accusations against him"; and (2) that the trial court's ruling was the reason he waived his right to testify.
¶39 With regard to the first argument, we note that his 1996 Indiana conviction was included in the complaint against Gee on these charges. Moreover, Gee never raised this argument before the trial court, and "[a]rguments raised for the first time on appeal are generally deemed forfeited." See Northbrook Wis. LLC v. City of Niagara , 2014 WI App 22, ¶20, 352 Wis. 2d 657, 843 N.W.2d 851. Additionally, other than citing to the relevant article and section of the Wisconsin Constitution, Gee fails to provide any legal support for his argument, and we generally do not consider arguments that are inadequately briefed. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶40 With regard to his second argument, Gee again provides no legal support other than citing the *86 Wisconsin Constitution regarding his right to testify. His argument is, again, undeveloped, especially in light of the fact-specific analysis required for an as-applied constitutional challenge. See Tammy W-G. , 333 Wis. 2d 273, ¶49, 797 N.W.2d 854. "[W]e will not abandon our neutrality to develop arguments[.]" Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82. Thus, both of Gee's arguments fail due to Gee's failure to develop them.
¶41 We further point out that Gee does not argue that the trial court deprived Gee of his right to testify. Indeed, the record would not support such an argument, in that it clearly indicates that the trial court engaged in an appropriate colloquy with Gee during both trials with regard to this right. Gee instead asserts that the trial court's ruling affected his choice regarding his right to testify. However, this argument has previously been rejected by our supreme court. See Neely v. State , 97 Wis. 2d 38, 52, 292 N.W.2d 859 (1980) ("While the defendant obviously has an interest in defending against the [S]tate's accusations by testifying on his own behalf, neither the choice to testify nor the choice of alternatives defendant must make once he waives his privilege by testifying can be said to be unconstitutionally imposed on him."). Therefore, Gee's as-applied constitutional challenge of WIS. STAT. § 904.04(2)(b)2. fails on the merits as well.
II. Challenge of the Trial Court's Exercise of Discretion
¶42 Gee next argues that the trial court erroneously exercised its discretion in ruling that his 1996 Indiana conviction could be introduced for rebuttal *87 purposes.[2] We review a trial court's admission of other acts evidence under the erroneous exercise of discretion standard. *297 Sullivan , 216 Wis. 2d at 780, 576 N.W.2d 30. Accordingly, we will uphold an evidentiary ruling if the trial court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." Id. at 780-81, 576 N.W.2d 30.
¶43 The trial court affirmatively stated in its ruling that other acts evidence sought to be admitted under WIS. STAT. § 904.04(2)(b)2. is subject to the Sullivan test. However, the trial court provided no legal authority for this proposition, and we have found none. Nevertheless, whether the Sullivan test is applied or not, we conclude that the trial court's decision was not an erroneous exercise of its discretion.[3]
*88 ¶44 Under WIS. STAT. § 904.04(2)(b)2., in a criminal prosecution for first-degree sexual assault contrary to WIS. STAT. § 940.225(1), evidence of a conviction for a comparable offense in another jurisdiction may be admitted for purposes of proving the defendant's propensity for committing the current crime. See § 904.04(2)(b)2. Here, the other acts evidence the State sought to admit was Gee's 1996 conviction for rape in Indiana. This evidence meets all of the criteria of § 904.04(2)(b)2. Thus, the trial court's decision to admit the evidence was reasonable based on the facts of the case and the provisions of the statute. See Sullivan , 216 Wis. 2d at 780-81, 576 N.W.2d 30.
¶45 The trial court's Sullivan analysis was also performed in a reasonable manner. The three-step Sullivan test for determining the admissibility of other acts evidence asks: (1) whether the evidence is being offered for a proper purpose, that is, establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (2) whether the evidence is relevant; and (3) whether the probative value of the evidence substantially outweighs the danger of unfair prejudice to the defendant. Id. at 772-73, 576 N.W.2d 30.
¶46 The trial court concluded that all three prongs of the test were met. The court noted that the factual similarities between the 1996 rape and the current sexual assault charges were "eerie," and thus the prior conviction could properly be admitted to show motive, intent, plan, and identity. The court further stated that those factual similarities rendered the prior conviction highly relevant, satisfying the second prong. With regard to the third prong, the court *89 determined that any undue prejudice against the defendant would effectively be "waiv[ed]" by Gee based on the court's restriction on admitting the evidence only on rebuttal in the event that Gee "open[ed] the door" by attacking the victims' credibility. Again, this was a reasonable decision reached after consideration of the facts of the case and the relevant law. See id. at 780-81, 576 N.W.2d 30.
¶47 Therefore, we conclude that the trial court did not err in allowing Gee's 1996 prior conviction to be introduced on rebuttal. Accordingly, we affirm Gee's judgment of conviction.
By the Court. -Judgment affirmed.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

In an alternative argument, the State asserts that Gee has abandoned his challenge to the other acts evidence by choosing not to testify because, as a result of that choice, the evidence of his previous conviction was never introduced. Therefore, the State argues that there was never a record developed relating to the evidence's admission, and that this deficiency significantly hinders a harmless error analysis should the State want to present one.
Although the evidence was not introduced at trial because of Gee's strategic decision not to testify, we reviewed the trial court's ruling in conjunction with Gee's as-applied constitutional challenge, and we note that there was a thorough record regarding the trial court's reasoning for that ruling. Because we have determined that all of Gee's claims on appeal fail, we do not reach the issue presented in the State's alternative argument.

We note that this specific issue of whether the Sullivan test, see State v. Sullivan , 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998) applies to Wis. Stat. § 904.04(2)(b)2., is not a question that is before this court.